UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No: 02-40029NMG

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| TERESA M. SMITH, | ) |
| Defendant | ) |

**DEFENDANT, TERESA M. SMITH'S RESPONSE TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND §2255 MOTION**

PROCEDURAL HISTORY

On or about June 22, 2005, the Government filed a Government's Opposition to Defendant's Motion to Amend Motion Under 28 USC $2255 to Vacate, Set Aside or Correct Sentence. This response addresses the Goverment's allegations that Smith's motion is untimely; her claims are not cognizable on collateral review; and that the claims fail on the merits as well.

ARGUMENT

I.   Smith's Motion to Amend is Timely

The government claims that Teresa Smith's motion to amend is untimely, asserting that Smith should have made these arguments and/or claims in her initial motion. In it's argument, the government points out the very precise reason why Smith filed a motion to amend on May 5, 2005. The case, United States v. Booker, 04-104 (U.S. 2005), was decided on January 12, 2005, two weeks after the Defendant filed her initial motion. United States v. Booker explicitly gives Judges the authority to consider other factors in sentencing that were previously deemed "forbidden" or "irrevelant" under the Guidelines. These other factors are relevant to Defendant, Theresa Smith's specific situation.

The government claims that Defendant should have filed a motion to amend based on Blakely v. Washington, 02-1632 (U.S. 2004). However, the Government fails to acknowledge

Case 1:05-cv-10014-NMG   Document 9   Filed 08/04/2005   Page 2 of 8

that Blakely v. Washington, does not address the issues that may now be considered as factors in determining sentencing in Defendant Smith's case. At the time the Defendant filed her initial Motion to Amend, Defendant was not at liberty to ask the Court to consider these factors.

II.     Smith's Claims are Cognizable on Collateral Review

In Monahan v. Winn, D. Mass., No. 03-40075NG, (August 2003), the Court held that it could be argued that a sentencing court's reliance on long-standing Bureau of Prisons policy which is then changed, may result in a sentence predicted on "objectively ascertainable error," which is sufficient for a collateral attack under U.S. v. Addonizio, 442 U.S. 178 (1978), that a collateral attack on the lawfulness of a sentence, brought pursuant to 28 USC §2255, must be predicated on "objectively ascertainable error" and not merely the "frustration of the subjective intent of the sentencing judge."

The law recognizes a prisoner's due process right to be sentenced on accurate information, which was deemed relevant in the Monahan proceeding, and which is relevant in this instance. (See U.S. v. Montoya, 967 F.2d 1 (1st Cir.1992), that the accuracy of information before the sentencing judge bears on the fundamental fairness of the proceeding). In situations similar to the Defendant's, in which a sentence was given with the understanding that the prisoner would be eligible for community confinement at some point earlier than the last ten percent of the Defendant's sentence, other courts have held that this doctrine is appropriate.

III.    Smith's Claims Have Merit

Contrary to the government's assertions, Defendant Theresa Smith's claims do have merit.

A.      The Booker Claim

The Court in Castellini v. Lappin, D. Mass. No. 05-10220-PBS (April 2005), found that particular cases similar to those in which some Courts have found that the Bureau of Prisons curtailment of halfway house rights constitutes a violation of the Ex Post Facto Clause. Further, there are similarities with cases concerning the retroactive cancellation of early release credits. (See Monahan v. Winn, D. Mass., No. 03-40075NG, (August 2003), in which the Court found policy changes regarding halfway house placement comparable to the retroactive cancellation of early-release credits, which was condemned by the United States Supreme Court in Weaver v. Grahm, 450 U.S. 24 (1981) and Lynce v. Mathias, 519 U.S. 433 (1997), as an increase in punishment in violation of the Ex Post Facto Clause).

Specific to the Government's Opposition to the ICC issue raised in this Defendant's Motion, the fact that prisoners in the early-release credits cases were not necessarily entitled to the credits when they pleaded guilty, and were not guaranteed that the credits would be awarded, made no difference in the Supreme Court's analysis; what was critical was that the prisoners who were previously eligible for early release credits cases were not previously eligible for early release credits became ineligible following the change in policy. The Court in Monahan v. Winn felt that the same analysis applied to the retroactive deprivation of eligibility for halfway house

time, and it follows that the same analysis would apply in the instance of ICC eligibility being denied to the Defendant, given that she was sentenced and recommended for the program prior to the policy change that resulted in the program's termination.

B.   The Halfway House Claim

Notwithstanding the Bureau' of Prisons' discretion to have admitted the Defendant to the Intensive Confinement Center (ICC) program or not, courts in the Districts of Massachusetts and Connecticut have upheld the ICC-related claims of some defendants who were recommended to the program at sentencing, prior to the program's sudden and unannounced termination in January of this year. In terminating the program without prior notice and terminating the program for inmates who, like the Defendant, were sentenced and recommended for the program prior to its termination, the Bureau of Prisons has not only violated the Administrative Procedures Act, but has violated the Ex Post Facto Clause, as well as, violating the Defendant's Due Process rights.

Termination of the ICC program results in a violation of the Ex Post Facto Clause, with respect to the Defendant, who was sentenced in 2003, and recommended for the program nearly twenty-one months prior to the program's termination. Upon completing the ICC program, the Defendant would have begun a Community Confinement program in either May or August of 2006. Since the program's termination, the Defendant must remain incarcerated in prison until her "ten percent date," upon which she will be eligible for Community Confinement, in May of 2007; therefore, the conditions of the Defendant's confinement during that time will also be significantly altered. (See Castellini v. Lappin, D. Mass., No. 05-10220-PBS, (April, 2005), in which the Court agreed that the termination of the program likely constituted an unconstitutional ex post facto law with respect to prisoners sentenced prior to the program's termination; the plaintiff's eligibility for the sentence reduction was not only liminated, but the conditions of the plaintiff's confinement were also significantly altered). (See U.S.A. v. Coleman, D. Conn. No. 3:03CR156(EBB); on a Motion brought pursuant to 28 USC §2255, Defendant was resentenced to reflect the actual period of incarceration the Court intended when it had recommended that the inmate participate in the ICC program).

C.   The Boot Camp Program

Notwithstanding the Government's claim that the Defendant's placement in the ICC program would have been at the discretion of the Bureau of Prisons, the Defendant maintains that the BOP's termination of the ICC program created, in this instance, an unconstitutional ex post facto law, and violated the Defendant's Due Process Rights. Further, the sentencing Court had a reasonable expectation that the Defendant would be eligible for Community Confinement (consisting of time in both halfway house and home confinement) 9-12 month prior to her "ten percent date" of May 6, 2007.

D.   Smith's work and conduct in prison

Based on the Defendant's progress, as prepared by the Bureau of Prisons (attached as an

Case 1:05-cv-10014-NMG   Document 9   Filed 08/04/2005   Page 6 of 8

Exhibit to the Defendant's Motion to Amend), the Defendant has demonstrated progress toward rehabilitation in the form of "outstanding" work performance and participation in available therapy groups and educational programs, which makes her a viable candidate for placement in a community confinement program. Therefore, the Defendant respectfully seeks this Honorable Court's consideration of the issues raised herein, and asks this Honorable Court to consider amending the Defendant's sentence to reflect eligibility for a community confinement program prior to May, 2007.

## CONCLUSION

WHEREFORE for the above reasons, the Defendant, Teresa M. Smith, respectfully requests that the Court ALLOW her Motion to Amend Motion under 28 USC Section 2255 to Vacate, Set Aside or Correct Sentence.

Date: August 3, 2005

Respectfully Submitted,
The Defendant,
By Her Attorney,

Angelo P. Catanzaro (BBO# 078960)
Catanzaro and Allen
100 Waverly Street
Ashland, MA 01721
(508) 881-4566

F:\DATA\WORD\S\SMITH\Teresa\04-2493\post conviction matters\RESPONSE.OPP.2.wpd

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 8/3/05